**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **RODDRICK O. JORDAN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 5:24-CV-308 (CAR)** |
| **NICHOLAS DENNY, in his individual capacity,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

In this 42 U.S.C. § 1983 case, Plaintiff Roddrick O. Jordan asserts Defendant Nicholas Denny, an officer with the Bibb County Sheriff's Department's Gang Unit, unlawfully entered his property without a warrant and conducted a search of his home to locate a murder suspect believed to be in the area, violating Plaintiff's Fourth Amendment right to be free from unlawful search and seizure. In his Complaint, Plaintiff also asserted a claim for false imprisonment under Georgia law. Defendant Denny has moved for summary judgment. As explained below, Plaintiff abandoned his state law false imprisonment claim on summary judgment, and Defendant Denny is not entitled to qualified immunity on Plaintiff's § 1983 claim. Thus, Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED in part and DENIED in part**. The Motion is

**GRANTED** as to Plaintiff's state law false imprisonment claim and **DENIED** as to Plaintiff's § 1983 Fourth Amendment claim.

**LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2] Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3] When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5] If the moving party discharges

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[3] *See id.* at 249-52.
[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.[6] This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

**BACKGROUND**

This case arises from a warrantless entry and search of Plaintiff's residence on August 16, 2023, while Bibb County law enforcement officers, including Defendant Denny, were assisting Clayton County officers locate a murder suspect believed to be in the area. At the time of the events in this action, Defendant Denny was employed by the Bibb County Sheriff's Office and assigned to work with the Gang Unit.[8]

On August 15, 2023, the day before officers entered Plaintiff's home, Defendant Denny was instructed to assist Clayton County law enforcement personnel in locating and pre-drafting a search warrant for a murder suspect named Khalee Phipps who had a warrant for his arrest and whom the officers had information was in Macon.[9] A Clayton County officer asked Defendant to validate information they had received from the suspect's mother or aunt that the suspect was possibly at his aunt or uncle's house.[10] A search warrant for the suspect's cell phone number had revealed that the suspect's phone

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.
[7] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).
[8] Def. Depo, p. 11 [Doc. 21-1].
[9] *Id.* at pp. 23-24.
[10] *Id.* at p. 23.

showed activity (or "pings") between two locations—4003 Nisbet Road and 4005 Nisbet Road in Macon.[11] After learning of the suspect's cell phone activity between the two residences, Defendant checked the Bibb County Tax Assessor's records for both properties and confirmed the suspect's uncle owned 4003 Nisbet Road.[12]

The Tax Assessor's records for 4005 Nisbet Road showed Plaintiff owned that residence.[13] The records also showed that Plaintiff bought the residence from the suspect's aunt on July 26, 2021, over two years before the events in this case took place.[14] Defendant testified that when he saw the suspect's aunt's name at the top of the records, coupled with the information from Clayton County that the suspect's aunt and uncle owned the two residences, he overlooked that 4005 Nisbet Road was sold to Plaintiff in 2021.[15] Defendant stated he believed "either the [suspect's] aunt or uncle still owned both of the residences."[16]

Defendant was responsible for preparing the search warrants for the two properties.[17] After preparing search warrants, the protocol was for Defendant to submit them to a supervisor to review; the supervisor was then responsible for sending the

---

[11] *Id.* at pp. 23-25.
[12] *Id.* at p. 26.
[13] Bibb County Tax Assessor's Records for 4005 Nisbet Road, Ex. 4 to Def. Depo. [Doc. 21-1, p. 112].
[14] *Id.* at p. 113.
[15] Def. Depo., pp. 29-30.
[16] *Id.* at p. 24.
[17] *Id.* at p. 32.

warrants to the judge for approval.[18] Defendant prepared the search warrant affidavits for 4003 and 4005 Nisbet Road.[19]

The next day, on August 16, 2023, officers from Clayton County and Bibb County's SWAT team, Special Response Team, and Gang Unit, including Defendant, gathered in the early morning hours on Nisbet Road to search for the suspect.[20] Although Defendant had pre-drafted the search warrants the day before, they had not been approved.[21]

The two residences, 4003 and 4005, Plaintiff's residence, were next door to each other.[22] The officers went to Plaintiff's residence first.[23] Around 7:00 a.m., Defendant and the other officers went to Plaintiff's door. They wore tactical gear and brandished assault-style semi-automatic weapons.[24] Defendant states that SWAT team members knocked on Plaintiff's door; Defendant's supervisor, Sergeant Gray was stationed to the right of the door, and Defendant stood behind him.[25]

Plaintiff was asleep when he heard "banging" at his door and what sounded "like a gang of men outside."[26] He heard them say, "SWAT team coming in. We're about to blow

---

[18] *Id.* at p. 34.
[19] *Id.* at p. 36.
[20] *Id.* at p. 37.
[21] *Id.*
[22] *Id.* at p. 38.
[23] *Id.*
[24] Compl., ¶ 17 [Doc.1, p. 4].
[25] Def. Depo. at p. 39.
[26] Pl. Depo., p. 30 [Doc. 22-1].

[the door] down or kick it down[.]"[27] The officers had covered the peep hole of his door, so Plaintiff crawled up his stairs, looked out the window, and saw 11 or 12 officers at his door.[28] Plaintiff, still naked from sleeping, partially opened his door with the chain still engaged.[29] The officers had guns pointed at him and yelled at him "[h]ands up. Hands up. Open this door right now or I'm going to kick it up [sic]. Hands up or we're going to shoot."[30] Plaintiff states the officers allowed Plaintiff a "quick second" to disengage the chain and open it.[31]

Plaintiff asked if the officers had a search warrant to enter his residence.[32] Sergeant Gray responded, "yes, we do[.]"[33] Defendant states he then told Sergeant Gray "that the search warrant had not been signed."[34] The parties appear to agree at no time did Plaintiff consent to allow the officers into his home.

The parties' versions of the facts at this point diverge. Defendant states as the conversation between Sergeant Gray and Plaintiff about the search warrant took place, "a loud commotion was going on in the upstairs bedroom, which is extremely common …

---

[27] *Id.* at p. 32.
[28] *Id.* at pp. 31, 36.
[29] *Id.* at p. 33.
[30] *Id.* at p. 35.
[31] *Id.* at p. 34.
[32] Def. Depo., p. 50.
[33] *Id.*
[34] *Id.* at p. 51.

whenever we're trying to apprehend a murder suspect."[35] Thus, the SWAT team "made their own decision to make entry for a protective sweep because it sounded like somebody was in the upstairs bedroom."[36] Defendant states the officers only performed a protective sweep to determine the source of the noise and did not search the residence. The officers did not find Phipps in Plaintiff's home. When officers exited the home, "they said [the noise came from a] dog in a wire crate kennel."[37]

But Plaintiff maintains his dog made no noises,[38] and the officers conducted a full search of his residence. Plaintiff states after he released the chain and opened the door, the officers told him not to move, and he was not allowed to get dressed.[39] After the officers entered Plaintiff's home, Plaintiff asked what was happening, and the officers told him they were looking for a murder suspect, Khalee Phipps.[40] Plaintiff told the officers, "you guys are in the wrong house…. [H]e's next door."[41] The officers, including Defendant, entered Plaintiff's house at 7:18 a.m. Plaintiff states the officers searched his house "all over."[42] "They were in the living room. They were in all bedrooms. They were in the car

---

35 *Id.*
36 *Id.*
37 *Id.*
38 Pl. Depo., p. 58.
39 *Id.* at p. 34.
40 *Id.* at pp. 50-51; 57.
41 *Id.* at p. 57.
42 *Id.* at p. 48

garage."[43] They broke a stair and an air filter vent.[44] Plaintiff states the officers were in his home for 10-15 minutes.[45]

Bibb County Deputy Joshua Cravey was also present during these events. He testified he did not hear any loud noise or commotion[46] and "absolutely" entered Plaintiff's residence to conduct a search pursuant to what he believed was a valid search warrant.[47] He also stated no exigent circumstances existed.[48]

After leaving Plaintiff's house, the officers arrested Khalee Phipps next door at 4003 Nisbet Road. After apprehending Phipps, Defendant electronically submitted the affidavits and search warrant applications for the two properties.[49] Plaintiff contends Defendant's statements in the affidavits are contradictory and misleading and show Defendant fabricated the loud commotion because he did not include it.

At 7:27:05 a.m., Defendant submitted the affidavit and warrant application for 4003 Nisbet Road. In his affidavit, Defendant swore:

> The accused's mother gave Clayton County Investigators information that he was at his aunt Eulalia Phipps 11/01/1973 residence located at 4003 Nisbet

---

[43] *Id.*

[44] *Id.* at pp. 49-50.

[45] *Id.* at p. 48.

[46] Cravey Depo., p. 35-36 [Doc. 20-1].

[47] *Id.* at p. 21; *see also* pp. 17 (purpose of going to Plaintiff's house was to conduct search for murder suspect); 29 ("I can't think of a reason that we would go in that house without a warrant that time"); and 34 (no other reason for entering house other than pursuant to search warrant).

[48] *Id.*

[49] Def. Depo., pp. 33-34.

> Road in Macon Georgia. The accused cell phone number is also being pinged in the vicinity of the 4003 Nisbit Rd location.[50]

Just over a minute later, at 7:28:34 am, Defendant submitted the affidavit and warrant application for 4005 Nisbet Road, Plaintiff's residence. In his affidavit, Defendant swore:

> The accused's mother gave Clayton County Investigators information that he was at his Uncle Michael Phipps residence located at 4005 Nisbet Rd in Macon Georgia. The accused cell phone number is being pinged in the vicinity of the 4005 Nisbit Rd location.[51]

The search warrant for Plaintiff's residence was signed by the magistrate judge at approximately 7:39am.[52]

Plaintiff filed this lawsuit against Defendant under 42 U.S.C. § 1983 alleging the warrantless entry and search of his home violated his Fourth Amendment rights and under Georgia law for false imprisonment. Defendant now seeks summary judgment arguing he did not violate Plaintiff's clearly established rights and is protected by qualified immunity, and Plaintiff's detention was not unlawful under Georgia law.

**DISCUSSION**

As explained below, Defendant is entitled to summary judgment on Plaintiff's false imprisonment claim under Georgia law because Plaintiff abandoned his claim. But genuine issues of material fact exist as to whether Defendant violated Plaintiff's clearly

---

[50] Affidavit and Search Warrant Application for 4003 Nisbet Road, Def. Depo., Ex. 6 [Doc. 21-1, p. 119].
[51] Affidavit and Search Warrant Application for 4005 Nisbet Road, Def. Depo., Ex. 7 [Doc. 21-1, p. 125].
[52] *Id.* at p. 126.

established Fourth Amendment rights, and therefore Defendant is not entitled to summary judgment on Plaintiff's § 1983 claim.

## I. Plaintiff Abandoned his False Imprisonment Claim under Georgia Law

Plaintiff alleges a false imprisonment claim under Georgia law in his Complaint. Defendant moved for summary judgment on this claim, but in his response brief, Plaintiff did not respond to Defendant's arguments or even mention his false imprisonment claim. Thus, Plaintiff has abandoned his false imprisonment claim, and summary judgment should be granted on this basis. "Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes abandonment of that claim and warrants the entry of summary judgment for the opposing party."[53] Thus, Defendant's Motion for Summary Judgment as to Plaintiff's false imprisonment claim under Georgia law is **GRANTED**.

## II. Defendant Not Entitled to Summary Judgment on Plaintiff § 1983 Claim

Section 1983 provides private citizens a cause of action against persons who violate their constitutional rights while acting under color of state law.[54] Plaintiff alleges

---

[53] *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) (citations omitted); *see also Schwartz v. Bd. of Supervisors ex rel. Vills. Cmty. Dev. Dists.*, 672 F. App'x 981, 983 (11th Cir. 2017) (holding that plaintiff waived any challenge to defendants' motion for summary judgment on certain claims by failing to address them in response to the motion for summary judgment); *Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 855 (11th Cir. 2013) (per curiam) concluding that plaintiffs abandoned their excessive force claim and their state law claims by failing to respond to defendants' summary judgment arguments relating to those claims).
[54] 42 U.S.C. § 1983.

Defendant violated his Fourth Amendment right to be free from unreasonable searches when he entered Plaintiff's property and home without a warrant and in the absence of exigent circumstances. Defendant first argues Plaintiff cannot prove Defendant caused Plaintiff's alleged injury and then argues he is entitled qualified immunity because Plaintiff has not shown Defendant violated Plaintiff's clearly established Fourth Amendment rights.

**1. Causation**

Defendant first contends Plaintiff cannot prove Defendant's actions caused his injuries. "[A] public official is liable under § 1983 only if he *causes* the plaintiff to be subjected to [a] deprivation of his constitutional rights."[55] Defendant contends Plaintiff premises his Fourth Amendment claim on Defendant's alleged false statements in the search warrant affidavits which Defendant submitted after entry into Plaintiff's home; thus, because the false statements occurred after the violation, Plaintiff cannot prove Defendant's actions caused any constitutional violation. The Court is unpersuaded.

Contrary to Defendant's argument, Plaintiff does not premise his claim on any alleged misleading statements in the affidavits. Plaintiff premises his claim on the warrantless entry and search of his home, which Plaintiff contends entitles him not only to

---

[55] *Williams v. Aguirre*, 965 F.3d 1147, 1167 (11th Cir. 2020) (emphasis and alterations in the original) (quoting *Baker v. McCollan*, 443 U.S. 137, 142 (1979)).

nominal damages for the constitutional violation itself,[56] but also to compensatory and punitive damages for the alleged emotional and mental injuries he suffered as a result of the alleged violation.[57] Plaintiff relies on Defendant's allegedly contradictory and misleading statements in the warrant affidavits as evidence Defendant concealed the warrantless entry and search made earlier in the day and to support an inference that Defendant's statements about the purported exigent circumstances for entering Plaintiff's home were intentionally false.

**2. Qualified Immunity**

Defendant next contends he is entitled to qualified immunity. "Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[58] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" from litigation.[59] To prove they are entitled to qualified immunity, public officials must first show they were acting within the scope of

---

[56] A Plaintiff is entitled to nominal damages for constitutional violations even without showing actual injury. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) (nominal damages are recoverable for Fourth Amendment violations "even if [Plaintiff] cannot prove actual injury sufficient to entitle him to compensatory damages.").
[57] Complaint, pp 12-13 [Doc. 1].
[58] *Metz v. Bridges*, 2024 WL 5088586, *2 (11th Cir. Dec. 12, 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation marks omitted).
[59] *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007).

their discretionary authority when the alleged misconduct took place.[60] If proven, the burden shifts to the plaintiff to show: (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct.[61] "Qualified immunity is not appropriate where the officer's actions were objectively unreasonable: that is, under the facts and circumstances known to the officer at the time, his actions violated clearly established law."[62] Here, Defendant was clearly acting within his discretionary authority at all times relevant to Plaintiff's claim. And, as set forth below, taking the facts in the light most favorable to Plaintiff, he has shown a violation of his clearly established Fourth Amendment rights.

**a. Fourth Amendment Violation**

The Fourth Amendment, applied to the states by the Fourteenth Amendment, provides, in pertinent part, that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated."[63] "Because 'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' it is 'a basic principle of Fourth Amendment law that

---

[60] *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).
[61] *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).
[62] *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008).
[63] U.S. Const. amend. IV.

searches and seizures inside a home without a warrant are presumptively unreasonable."[64] And it is well established that police may not enter a third party's home to arrest a suspect without a search warrant or an exigency.[65] A warrantless entry and search is lawful, "only when some exception to the warrant requirement—such as consent or exigent circumstances—exists."[66] And "[t]he private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself."[67]

There is no dispute that Defendant and the other officers entered Plaintiff's property and home without a valid search warrant. Defendant's arguments that he lawfully entered Plaintiff's home are threefold: (1) his and the other officers' presence at Plaintiff's door was a lawful "knock and talk," and their entry into Plaintiff's home was lawfully based on the exigent circumstances of the loud noise to conduct a protective sweep; (2) even if their entry was not based on the loud noise to justify a protective sweep, the totality of circumstances shows their entry and search was justified pursuant to exigent circumstances to protect Plaintiff and the public from a dangerous criminal; and (3) even

---

[64] *Bates*, 518 F.3d at 1239 (quoting *Payton v. New York*, 445 U.S. 573, 585-86 (1980)).
[65] *Steagald v. United States*, 451 U.S. 204 (1981).
[66] *Id.* (citations omitted).
[67] *United States v. Taylor*, 458 F.3d 1201, 1206 (11th Cir. 2006) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

if the facts on summary judgment show a Fourth Amendment violation, no clearly established law gave Defendant notice his actions were unconstitutional. But construing the facts in Plaintiff's favor, the law was clearly established and gave Defendant fair warning his warrantless presence at Plaintiff's door and entry into Plaintiff's home was unconstitutional, and Defendant is not entitled to qualified immunity on summary judgment.

(i) Defendant's Presence on Plaintiff's Property & Protective Sweep

Defendant first contends he and the officers conducted a valid "knock and talk" and thus were lawfully on Plaintiff's premises, and his warrantless entry into Plaintiff's home was justified as a protective sweep of the premises due to the loud commotion he heard, later determined to come from Plaintiff's dog in an upstairs bedroom. Plaintiff argues Defendant and the officers' actions did not qualify as a "knock and talk," and thus they unlawfully entered his curtilage, and no loud commotion or other exigent circumstances authorized a protective sweep of his residence.

"Because the curtilage is a constitutionally protected space, the police must have an express or implied license to be there without a warrant."[68] "The 'knock and talk' rule provides that police have an owner's implied permission to 'approach a home and knock,

---

[68] *Id.* (citing *Florida v. Jardines*, 569 U.S. 1, 7-8 (2013)).

precisely because that is no more than any private citizen may do.'"[69] "A knock and talk is a consensual encounter between police who seek to gather information and a civilian, which takes place at the civilian's home."[70] But the scope of the knock and talk exception is limited in two respects.[71] First, "the exception is geographically limited to the front door or a 'minor departure' from it."[72] Second, the exception does not apply where the objective purpose of the officer's behavior is "to do nothing but conduct a search."[73] The Court may look to whether "the officers' intent in approaching the [house] was[ ] that of an ordinary citizen."[74]

Here, although the officers remained at Plaintiff's front door, the facts on summary judgment show Defendant and the other officers' actions and intent at Plaintiff's front door were not an attempt to knock and talk to the occupants of a residence like a normal invitee. On the contrary, the facts show their presence was to search for and arrest the murder suspect. In the light most favorable to Plaintiff, the facts show Defendant, together with 10 or 11 other officers, approached Plaintiff's residence in tactical gear and brandishing assault-style semi-automatic weapons; they covered the peephole, "banged" on the door,

---

[69] *Id.* (quoting *Jardines*, 569 U.S. at 7).
[70] *Young v. Borders*, 850 F.3d 1274, 1295 (11th Cir. 2017).
[71] *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015).
[72] *Id.*
[73] *Jardines*, 569 U.S. at 10, n. 4.
[74] *United States v. Maxi*, 886 F.3d 1318, 1327 (11th Cir. 2018).

demanded Plaintiff open it, and threatened to break it down if he didn't. Plaintiff testified when he opened the door the officers' guns were pointed at him and they threatened to shoot. Thus, the officers' actions at the door were more consistent with a show of authority and force to gain entry and not a mere request for Plaintiff to come to the door so they could talk. And the facts show the officers always intended to access Plaintiff's property to apprehend Phipps. Deputy Cravey testified he entered Plaintiff's house pursuant to what he believed was a valid search warrant to seize Phipps. Because the facts in the light most favorable to Plaintiff show Defendant and the other officers' actions was "to do nothing but conduct a search,"[75] did not qualify as a knock and talk, and thus, Defendant did not have a license to enter the curtilage of Plaintiff's home.

Even if Defendant lawfully conducted a knock and talk on Plaintiff's premises, a genuine issue of material fact exists as to whether a loud commotion even occurred to give Defendant a reasonable belief to enter Plaintiff's home to conduct a protective sweep of the premises. "A protective sweep may [ ] be undertaken without an arrest warrant, so long as the officers are lawfully within the premises due to, for example, the existence of exigent circumstances."[76] "In order to conduct a protective sweep, an officer must 'possess

---

[75] *Jardines*, 569 U.S. at 10, n. 4.
[76] *United States v. Timmann*, 741 F.3d 1170, 1181 (11th Cir. 2013) (citing *United States v. Caraballo*, 595 F.3d 1214, 1224-25 (11th Cir. 2010)).

a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.'"[77]

Although Defendant states he heard a loud commotion coming from upstairs after Plaintiff opened his door, both Plaintiff and Deputy Cravey denied hearing any loud noise at all. Moreover, Deputy Cravey testified he entered the home pursuant to what he believed was a valid search warrant, not a loud noise. Thus, the facts on summary judgment do not show Defendant was authorized to enter Plaintiff's residence to conduct a protective sweep based on any loud commotion.

(ii) Exigent Circumstances

Defendant next contends under the totality of the circumstances, exigent circumstances justified his warrantless entry into Plaintiff's residence. Defendant argues the officers had an arrest warrant for a dangerous murder suspect whose cell phone data revealed he was likely located either at Plaintiff's residence or his aunt's residence next door; thus, warrantless entry into Plaintiff's home was justified to protect Plaintiff and others nearby.

"[A]bsent exigent circumstances, law enforcement officers may not enter the home of a third party to search for the subject of an arrest warrant without first securing a search

[77] *Id.* (quoting *Buie*, 494 U.S. at 337).

warrant for that home."[78] "The exigency exception only applies when 'the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.'"[79] The police must reasonably believe that an emergency situation justifies warrantless action, such as situations involving "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit."[80]

The police "bear a heavy burden of proving that the exigent circumstances exception validates a warrantless entry or search of a third party's home to look for a non-resident."[81] To meet that burden, the government must demonstrate the existence of both probable cause and exigency.[82] "Where the exigency is an emergency, "probable cause exists where law enforcement officials 'reasonably believe' that someone is in danger."[83] Whether an exigency exists is a matter to be determined objectively; "[t]he officer's subjective motivation is irrelevant."[84]

Even if the Court assumes Phipps's arrest warrant for murder gave Defendant a reasonable belief Plaintiff and the public were in danger, Defendant has not established

---

[78] *Bates*, 518 F.3d at 1244 (citing *Steagald*, 451 U.S. 204).
[79] *United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991) (quoting *United States v. Burgos*, 720 F.2d 1520, 1526 (11th Cir. 1983)).
[80] *United States v. McCoy*, 259 F. App'x 264, 267 (11th Cir. 2007).
[81] *Bates*, 518 F.3d at 1245 (citing *Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984), and *Vale v. Louisiana*, 399 U.S. 30, 34 (1970)).
[82] *Id.* (citing *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).
[83] *Bates*, 518 F.3d at 1245 (citing *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002) (per curiam)).
[84] *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404-405 (2006).

facts sufficient to demonstrate that the situation was sufficiently urgent or that a true emergency existed to justify his entry into Plaintiff's home. The arrest warrant for Phipps alone is "clearly insufficient[ ] to authorize [Defendant] to enter the premises of any third party, even if he had reason to believe [Phipps] might be there."[85] Exigent circumstances require a "compelling need for official action and no time to secure a warrant."[86]

Here, the facts show Defendant had time to secure a warrant. He pre-drafted the warrant affidavits the day before the search occurred, and no facts show he was unable to have it executed before appearing at Plaintiff's door. Indeed, it appears officers believed the warrant had been executed. Moreover, the evidence in the light most favorable to Plaintiff shows no "compelling need for official action."[87] No evidence in the record shows that Phipps was armed or posing any urgent danger to Plaintiff or the public to justify Defendant's warrantless entry. Indeed, Deputy Cravey testified that there was no exigency involved when he entered Plaintiff's residence.[88]

Defendant also cites law on hot pursuit. The "'hot pursuit' of a fleeing suspect" is among the recognized situations in which exigent circumstances may exist.[89] "[H]ot

---

[85] *O'Rourke v. Hayes*, 378 F.3d 1201, 1209 (11th Cir. 2004).
[86] *Michigan v. Taylor*, 436 U.S. 499, 509 (1978).
[87] *Id.*
[88] Cravey Depo., pp. 20-21.
[89] *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983).

pursuit requires some sort of chase."[90] And the Supreme Court has clarified that "the claim of hot pursuit is unconvincing [where] there was no immediate or continuous pursuit of the [suspect] from the scene of a crime."[91] The facts here do not show an immediate continuous pursuit of Phipps such that Defendant was in "hot pursuit" of a fleeing suspect to justify his entry into Plaintiff's home.

Defendant also states that Sergeant Gray, Defendant's supervising officer, mistakenly believed the search warrant had been executed and erroneously told Plaintiff he had a search warrant. To the extent Defendant argues he merely followed his supervisor and the other officers inside, "precedent squarely precludes his claim. In *Hartsfield*, [the Eleventh Circuit Court of Appeals] held that all officers, including those following someone else's lead, could be held liable under § 1983 if 'they knew or should have known that their conduct might result in a violation of the [plaintiff's] Fourth Amendment rights.'"[92] Here, Defendant clearly knew he had no valid search warrant when he entered Plaintiff's home. "Whether or not the police officers accompanying [Defendant] decided to enter [Plaintiff's home], their unconstitutional behavior did not relieve [Defendant] of his

[90] *United States v. Santana*, 427 U.S. 38, 42-43 (1976).
[91] *Welsh*, 466 U.S. at 753.
[92] *O'Rourke*, 378 F.3d at 1210 (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 956 (11th Cir. 1995)).

responsibility to decide for himself whether to violate clearly established constitutional rights by intruding into the [home] without a warrant or exigent circumstances."[93]

Because Defendant had neither consent nor a warrant, and the facts in this case taken in the light most favorable to Plaintiff do not indicate Defendant was lawfully on Plaintiff's property or that exigent circumstances existed to justify Defendant's entry into Plaintiff's residence, for purposes of qualified immunity at the summary judgment stage Plaintiff has demonstrated a violation of his Fourth Amendment rights.

**1. Violation of Clearly Established Law**

Having determined the facts in the light most favorable to Plaintiff establish a jury question as to whether Defendant violated Plaintiff's Fourth Amendment rights, the Court must now determine "whether the violation was so clearly established that [Defendant] should be stripped of the qualified immunity customarily granted law enforcement officers engaged in the discretionary performance of their official duties."[94] "The critical inquiry is whether the law provided [Defendant] with 'fair warning' that his conduct violated the Fourth Amendment."[95]

---

[93] *Id.*
[94] *McClish v. Nugent*, 483 F.3d 1231, 1248 (11th Cir. 2007).
[95] *Id.*

There are three recognized ways a plaintiff can show that a law is clearly established.[96] First, Plaintiff can point to a case with materially similar facts decided by the Supreme Court, the Eleventh Circuit, or the highest court of the relevant state.[97] Second, Plaintiff can show "a broader, clearly established principle should control the novel facts in this situation."[98] This principle must be "specific enough to give the officers notice of the clearly established right."[99] Finally, "the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary."[100] "The relevant dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [individual in the defendant's position] that his conduct was unlawful in the situation he confronted."[101] Although a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, existing precedent *must* have placed the statutory or constitutional question beyond debate."[102]

At the time of the incident in this case, it was well-established as "a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant

---

[96] *Sebastian v. Ortiz*, 370 F.3d 1301, 1310 (11th Cir. 2019).
[97] *Id.*
[98] *Id.* (quotation marks and citation omitted).
[99] *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).
[100] *J.W. ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259-60 (11th Cir. 2018).
[101] *Morris v. Town of Lexington, Ala.*, 748 F.3d 13161322 (11th Cir. 2014) (emphasis in the original).
[102] *Id.* (internal quotation marks and citation omitted).

are presumptively unreasonable."[103] Supreme Court and Eleventh Circuit law was clear that a nonconsensual, warrantless entry of a third party's home to search for a suspect is per se unreasonable unless certain "carefully delineated" exigent circumstances existed such as immediate danger to human life and hot pursuit of a fleeing felon.[104] But a reasonable officer in Defendant's shoes would not have believed that exigent circumstances existed to justify a warrantless search. Assuming Defendant reasonably believed Phipps was located at Plaintiff's home based on his cell phone pings, the only evidence in the record showing Phipps was dangerous is his arrest warrant for murder. The Supreme Court had made clear an arrest warrant alone is insufficient to enter third party's home because "[a]rmed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances."[105] The facts do not show Phipps was armed, Plaintiff was in danger, or that the officers were in hot pursuit of Phipps. Thus, Defendant is not entitled to qualified immunity at this stage.

**CONCLUSION**

Based on the foregoing, Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** as to Plaintiff's state

---

[103] *Payton v. New York*, 445 U.S. 573, 586 (1980).
[104] *See Bates*, 518 F.3d at 1249; *Olson*, 495 U.S. at 100; *Welsh*, 466 U.S. at 749-50; *Holloway*, 290 F.3d at 1337.
[105] *Steagald*, 451 U.S. at 215.

law false imprisonment claim and **DENIED** as to Plaintiff's § 1983 Fourth Amendment claim.

**SO ORDERED,** this 29th day of September, 2026.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT